## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CESAR DIAZ SANDOVAL,

              Petitioner,                    Case No. 2:25-cv-12987

v.                                        Hon. Brandy R. McMillion
                                             United States District Judge

KEVIN RAYCRAFT, *et al*,

              Respondents.

_____/

## <u>OPINION AND ORDER GRANTING</u>
## <u>WRIT OF HABEAS CORPUS (ECF NO. 1)</u>

Petitioner Cesar Diaz Sandoval ("Diaz Sandoval" or "Petitioner") has filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, alleging he is being unlawfully detained at the North Lake Correctional Facility in violation of the Immigration and Nationality Act ("INA"). *See generally* ECF No. 1. Diaz Sandoval, a Mexican citizen, is pending immigration proceedings to remove him from the United States. Despite having been in this country since 1999, raising four children who are all U.S. citizens, and never engaging in criminal activity, Respondent[1] is holding Diaz Sandoval and refusing to provide him with a bond

---

[1] Petitioner files this action against Kevin Raycraft ("Raycraft"), Acting Field Director of Enforcement and Removal Operation ("ERO"), Detroit Field Office, Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary, U.S. Department of Homeland Security; U.S. Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; and the

hearing pending his removal proceedings.  *Id.*  For the reasons below, this Court finds that Diaz Sandoval's detention without a bond hearing is unlawful, a violation of his due process rights, and orders his immediate release, or in the alternative, a bond hearing within seven (7) days.  Accordingly, his Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.

## I.

Diaz Sandoval is a citizen of Mexico, who has resided in the United States since at least 1999.  ECF No. 1, PageID.6.  He has four children, ranging from ages four to eighteen—all of whom are United States citizens.  *Id.*  His 11-year-old daughter is actively being treated for idiopathic scoliosis.  *Id.* at 6-7.  Diaz Sandoval has no criminal history.  ECF No. 6, PageID.118.

Diaz Sandoval's first encounter with DHS was on December 14, 2009 when he was arrested by the United States Border Patrol and charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) through a Notice to Appear.  ECF No. 5-2, PageID.77; ECF No. 5, PageID.50.  In it, DHS alleged the following:

1.   You are not a citizen or national of the United States;
2.   You are a native of MEXICO and a citizen of MEXICO;
3.   You arrived in the United States at or near an unknown plac[e], at an unknown time on or about an unknown date;

---

Executive Office for Immigration Review ("EOIR").  In response to this Petition, the Government contends that Petitioner's claim should only be brought against Raycraft, ECF No. 5, PageID.53, and Petitioner does not oppose, ECF No. 6, PageID.105.  Thus, the Court will dismiss the Petition against all Respondents except for Raycraft (hereinafter referred to as "Respondent" or the "Government").

    4.   You were not then admitted or paroled after inspection by an
          Immigration Officer.
          OR
          At that time you arrived at a time or place other than as designated by
          the Attorney General.

*See* ECF No. 6-2, PageID.123.   The Notice to Appear also included that Diaz

Sandoval was subject to removal pursuant to:

> "212(a)(6)(A)(i) of the Immigration and Nationality Act, as
> amended, in that you are an alien present in the United States
> without being admitted or paroled, or who arrived in the United
> States at any time or place other than as designated by the Attorney
> cGeneral."

ECF No. 6-2, PageID.123.  DHS issued a Notice of Custody Determination two days

later, on December 16, 2009, which released Diaz Sandoval on bond pending his

removal proceedings.  ECF No. 6-3, PageID.125; ECF No. 5-2, PageID.78.  That

notice cited Section 236 of the INA as the authority for Diaz Sandoval's detention.

*See* ECF No. 6-3, PageID.125.

     During a June 23, 2010 master calendar hearing a few months later, Diaz

Sandoval conceded to his removability.  ECF No. 5-2, PageID.78.  Later, during a

September 2010 master calendar hearing, Petitioner applied for cancellation of

removal under 8 U.S.C. § 1229b(b)(1).  ECF No. 1, PageID.7.  His cancellation of

removal application is still pending.  ECF No. 1, PageID.15.  On January 26, 2016,

DHS filed a Motion to Administratively Close Petitioner's removal proceedings

given he was a low priority for enforcement, which an Immigration Judge ("IJ")

granted on February 10, 2016.  ECF No. 5-2, PageID.78.  ICE ERO cancelled his bond on February 23, 2016, and sent him a Form I-391 (Immigration Bond Cancelled) to his obligor.  ECF No. 5-2, PageID.79.

On July 8, 2025, ICE, in coordination with DOJ, issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," requiring all noncitizens who entered the United States without inspection to be subject to mandatory detention without bond.  ECF No. 1, PageID.10.  The policy applies this detention framework to any noncitizen regardless of when or where they are apprehended.  *Id.*

Nearly 10 years after cancelling Diaz Sandoval's bond and administratively closing his case, ICE ERO Officers arrested him on July 13, 2025, and served him with a Form I-200, Warrant for Arrest of Alien.  ECF No. 5-2, PageID.79.  DHS also filed a Motion to Re-Calendar Diaz Sandoval's removal proceedings on July 17, 2025.  *Id.*  Diaz Sandoval sought and was denied bond on July 29, 2025, after an IJ in Detroit declined having jurisdiction over his case.  ECF No. 1, PageID.15-16.  The IJ issued an Order which included a checked box that simply stated: "Denied, because No jurisdiction, alternatively $10,000 with ATD at DHS discretion."[2]  ECF No. 1-2, PageID.21.  Both, Diaz Sandoval and the Government waived any right to

---

[2] The Court notes that the record is unclear on whether DHS decided against exercising its discretion to grant Petitioner bond of "$10,000 with ATD at DHS discretion."  ECF No. 1-2, PageID.21.  Nonetheless, to the extent that the Government is holding Petitioner under § 1225(b)(2), for all the reasons stated herein, the Court requires application of § 1226(a).

appeal the decision before the Board of Immigration Appeals ("BIA").  ECF No. 1-2, PageID.22.

On September 22, 2025, Diaz Sandoval filed a petition for habeas corpus before this Court, pursuant to 28 U.S.C. § 2241.  ECF No. 1.[3]  His Petition alleges violations of the INA and the Fifth Amendment Due Process Clause.  *See id.* at PageID.16-17.  Diaz Sandoval argues that as a noncitizen residing in the United States, charged as inadmissible for having initially entered the country without inspection, 8 U.S.C. § 1226(a) allows for his release on conditional parole or bond pending removal hearings, after a detention hearing to evaluate his risk of flight and dangerousness.  *See generally id.*; ECF No. 6.  The Government asserts that under 8 U.S.C. § 1225(b)(2)(A), Diaz Sandoval is properly detained because he falls in a category of noncitizens that the statute mandates be detained pending removal proceedings.  *See generally* ECF No. 5.  Diaz Sandoval seeks immediate release from custody or, in the alternative, a bond hearing.  ECF No. 1, PageID.18.

Diaz Sandoval's Petition has been fully briefed.  *See* ECF Nos. 5, 6.  The Court has reviewed the filings and finds that the issues have been adequately briefed; therefore, a hearing is unnecessary.  *See* E.D. Mich. L.R. 7.1(f)(2).  As the Petition is now ripe for decision, the Court will rule on the record before it.  *Id.*

---

[3] This matter was originally assigned to the Honorable Linda V. Parker and reassigned to the undersigned as a companion to *Lopez-Campos v. Raycraft*, Case No. 25-cv-12987-BRM-EAS.  The Court previously considered nearly identical factual issues and the same legal issues in *Lopez-Campos*.

## II.

Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Diaz Sandoval seeks habeas relief arguing he is being unlawfully detained in violation of the INA, because "[t]he mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents." ECF No. 1, PageID.16-17.

Congress established two statutes which principally govern detention of noncitizens pending removal proceedings. 8 U.S.C. §§ 1225 and 1226. The first – Section 1225 – is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The use of "the word 'arriving' indicates that the statute governs 'arriving' noncitizens, not those present already." *See Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (citing *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025)). And here, the title of the statute is instructive and "especially valuable [where] it reinforces what the text's nouns and verbs independently

suggest." *Barrera*, 2025 WL 2690565 at *4 (citing *Yates v. United States*, 574 U.S. 528, 552 (Alito, J., concurring in judgment)).

This section is a mandatory detention provision that states, in relevant part:

> **(2)  INSPECTION OF OTHER ALIENS**
> **(A)  In general**
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).  Key to the issues raised here, Section 1225 applies to "applicants for admission," who are noncitizens "present in the United States who [have] not been admitted or who arrive[] in the United States" 8 U.S.C. § 1225(a)(1). Upon arrival, all applicants for admission must undergo screening by an examining immigration officer, and if it is determined that the applicant for admission "is not clearly and beyond a doubt entitled to be admitted," they "***shall*** be detained for" standard removal proceedings.  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The only exception to this mandatory detention provision is for noncitizens who are released "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).

The second statutory provision – Section 1226, titled: "Apprehension and detention of aliens" – provides for a discretionary detention framework, and states, in relevant part:

**(a) ARREST, DETENTION, AND RELEASE**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General …

8 U.S.C. § 1226(a). Subsection (c) of Section 1226 prohibits certain noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) by virtue of their presence in the country without being admitted (like Petitioner) from being released on bond, *but only if* the noncitizen has also been:

charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E)[4]. Relevant here, noncitizens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an Immigration Judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

---

[4] This section that subjects certain noncitizens to mandatory detention was added by Congress in January 2025 with the passing of the Laken Riley Act. Pub. L. No. 119-1, 139 Stat. 3 (2025).

## III.

## A.    ADMINISTRATIVE EXHAUSTION

Before determining the merits of this Petition, the Court must first address Respondent's argument that it should require Petitioner to exhaust his administrative remedies (*e.g.* appeal the IJ's decision to deny him a bond hearing to the BIA), before Diaz Sandoval is permitted to proceed with his habeas Petition.  *See* ECF No. 6, PageID.116-19.  The Court disagrees exhaustion is necessary.

"Where Congress specifically mandates, exhaustion is required."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1991).  But when it is not mandated, the decision to require exhaustion is within the sound discretion of the court.  *Id.; see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).  Exhaustion requirements not written into the text of the statute are prudential.  *See Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994).  "Prudential exhaustion is a judge-made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not."  *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

In determining when to require prudential exhaustion, courts apply the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193-95 (1969)), which weighs whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

9

(2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*See Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015). Here, all three factors weigh against requiring exhaustion. First, the issues raised in the habeas petition are purely legal in nature and do not require the agency to develop the record. Second, because Diaz Sandoval's habeas petition includes a due process claim, the administrative scheme (*i.e.*, appeal to the BIA) is likely futile. And third, administrative review is not likely to change Respondent's position that Section 1225(b)(2)(A) applies in this context.

While the Court would ordinarily enforce the exhaustion doctrine when it serves the dual purpose of promoting judicial economy and protecting administrative agency authority, waiver is appropriate when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks. *See McCarthy*, 503 U.S. at 145; *see also Fazzani v. NE Ohio Corr. Ctr.*, 473 F.3d 229 (6th Cir. 2006) (citing *Aron v. LaManna*, 4 F. App'x 232, 233 (6th Cir. 2001) and *Goar v. Civiletti*, 688 F.2d 27, 28-29 (6th Cir. 1982)); *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981). Exhaustion is also excused when delay means hardship. *See Shalala v. Illinois Council*, 529 U.S. 1, 13 (2000).

Exhaustion would be futile because a bond appeal before the BIA would take too long.  *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025) (finding BIA bond appeals on average take six months to complete).  Diaz Sandoval has a Merits Hearing set for December 11, 2025, less than six months from now. ECF No. 5-2, PageID.80.  So, its senseless to require him to wait six months for the BIA to reach a decision on whether he is entitled to a bond hearing, when a removal determination would likely come before that decision.

And as further evidence of futility, the Government itself points out, "Diaz Sandoval is unlikely to obtain the relief he seeks through the administrative process based on a recent decision by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025), which is binding on the agency and the immigration courts, and which conclusively rejects Diaz Sandoval's arguments in this case."  *See* ECF No. 5, PageID.55-56.[5]  Consequently, any administrative remedy would leave Diaz Sandoval without recourse; and therefore should be excused.  *See Shawnee Coal*, 661 F.2d at 1093 (recognizing that administrative exhaustion may be excused if it would be futile).  It's unmistakable that waiver is

---

[5] While BIA decisions may be binding upon the agency at large, they are not binding on this Court. *See* 8 C.F.R. § 1003.1(g)(1) ("[D]ecisions of the [BIA] …are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States."); *see also Sulivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990) (noting agency rulings are binging on all components of the agency itself but not federal courts); *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024) (discussing interruption of laws is the solemn duty of the Judiciary).

appropriate because depriving Diaz Sandoval of his liberty while awaiting a BIA appeal decision certainly equates to hardship, and any delay results in the very harm Diaz Sandoval is trying to avoid by seeking the bond hearing – detention. *See Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 n.9 (D. Mass. July 7, 2025).

Aside from waiver, the Sixth Circuit has also previously held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted). Since Diaz Sandoval's Petition includes a due process claim, an appeal to the BIA would be pointless. The fact that Diaz Sandoval waived his right to appeal the denial of a detention hearing to the BIA further persuades the Court to exercise its discretion to decide this habeas petition. *See* ECF No. 1-2, PageID.22.

Furthermore, this Court and many others have waived exhaustion in similar proceedings. *See e.g. Shweika*, 2015 WL 6541689 at *13; *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Pizarro Reyes v. Raycraft, et al.*, No. 2:25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Romero v. Hyde, et al.*, ---F.Supp.3d----, No.

1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025).  And this Court has previously held, "[w]hen the liberty of a person is at stake, every day that passes is a critical one, and the Court cannot fault [a detainee] for taking appropriate measures to pursue his claims through the habeas process, with the expectation that his claims would be met with a sense of urgency, and he would receive a decision in a more expedient manner." *See Lopez-Campos*, 2025 WL 2496379 at *5.  The same holds true for Diaz Sandoval.

Hence, because exhaustion would be futile and unable to provide Diaz Sandoval with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition.

**B.    STATUTORY INTERPRETATION**

The Court then turns to the central question in this case, like it and so many other courts have had to do in recent months.  Which detention framework properly applies to a Mexican citizen, who has lived in the United States since 1999, was never lawfully admitted to the country, encountered ICE ERO Officers nearly 10 years after his removal proceedings were administratively stayed, and has now been arrested and is facing reinstated removal proceedings?  Diaz Sandoval says Section 1226(a), and the Government says Section 1225(b)(2)(A).  This Court has previously

ruled that Section 1226(a) applies and finds the facts of this case warrant the same result. *See Lopez Campos*, 2025 WL 2496379.

For the past 30 years, the Government has applied Section 1226(a) in seeking detention in this context; and even did so for this very Petitioner in 2009 when it originally instituted removal proceedings and released him on bond. *See* ECF No. 6-36, PageID.125. But now that the Government's immigration policy has changed, and Section 1225(b)(2)(A) is more favorable, it wants the Court to declare that the historical application of Section 1226(a) is incorrect. That, the Court will not do. Respondent simply can't have it both ways. The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal.

In harmonizing Sections 1225 and 1226 of the INA, the Court must interpret the meaning of the statutes that apply at the time of inspection by immigration officials and at the time of apprehension. "A statute should be construed so that effect is given to all its provisions[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009); *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (discussing how courts "must give effect to the clear meaning of statutes as written."). Each word within the statute must be given "'it's ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" *Kentucky,*

23 F.4th at 603 (citing *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997);

*Graham Cnty. Soil & Water Conservation Dist. et al. v. United States ex rel. Wilson*,

545 U.S. 409, 415 (2005)).  "The words of a statute must be read in their context and

with a view to their place in the overall statutory scheme."  *Roberts v. Sea-land*

*Servs., Inc.*, 566 U.S. 93, 101 (2012).  Courts must also "use every tool at their

disposal to determine the best reading of the statute."  *Loper Bright Enters. v.*

*Raimondo*, 603 U.S. 369, 400 (2024).  In doing so here, the Court must determine

whether Diaz Sandoval is lawfully detained under Section 1225(b)(2)(A), as

Respondent claims.  And the Court finds he is not.

Beginning with the language of the statute itself.  The plain text of Section

1225(b)(2)(A) and Section 1226(a) do not support Respondent's contention that "§

1225(b)(2) requires mandatory detention for noncitizens who fall within its terms

until the conclusion of their administrative proceedings and detaining a noncitizen

under § 1226(a), which allows release on bond, would nullify the mandatory

detention required by § 1225(b)(2)."  ECF No. 5, PageID.66.  Section 1225(b)

applies to "Inspection for applicants for admission," and subsection (1) governs

"Inspection of aliens ***arriving in*** the United States and certain other aliens who have

not been admitted or paroled."  *Id.* (emphasis added).  Section 1226, on the other

hand, applies to the "[a]pprehension and detention of aliens."  While not binding,

statutory headings/titles are instructive and provide the Court with the necessary

assurance that it is at least applying the right part of the statute in a given circumstance. *See Merit Mang. Grp, LP v. FIT Consulting, Inc.*, 583 U.S. 366, 380 (2018); *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute."). Here, it is as simple as looking to which statute makes the most sense – was Diaz Sandoval arriving and being inspected, or was he apprehended and detained. The facts could not be more clear that it was the latter.

Looking to Section 1225(b)(2)(A), when dealing with "inspection and removal of arriving aliens," immigration officials "shall" detain "an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Respondent argues that the term "applicant for admission" is defined as any "unadmitted noncitizens present in the United States," and therefore applies to anyone here unlawfully, even if they are already physically present—regardless of the length of time they have been present. *See* ECF No. 5, PageID.57 (citing 8 U.S.C. § 1225(a)(1), *Dep't of Homeland Sec. v. Thursiddigiam*, 591 U.S. 103, 139 (2020)). The Government similarly argues that "seeking admission" is an inquiry of seeking a "lawful entry." ECF No. 5, PageID.58. Thus, "[a] noncitizen's previous unlawful physical entry has no bearing on this analysis." ECF No. 5, PageID.58.

So, under Respondent's interpretation, Section 1225(b)(2)(A) requires detention of any noncitizen "present" in the country who has not been lawfully admitted. The Court finds this much too broad.

The Court finds that 1225(b)(2)(A) applies when people are being inspected, which usually occurs at the border, when they are seeking lawful entry into this country. Much like the petitioner in *Lopez-Campos*, Diaz Sandoval was arrested by ICE within the United States, over 25 years after arriving. *See Lopez-Campos*, 2025 WL 2496379 at *7. There is no logical interpretation that would find that Diaz Sandoval was actively "seeking admission" after having resided here, albeit unlawfully, for more than a quarter of a century.

In contrast, looking to the plain language of Section 1226, when dealing with "apprehension and detention of aliens," upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). This provision is clearly applicable, as Diaz Sandoval encountered ICE ERO Officers, then they arrested and detained him. He is pending removal proceedings in the Immigration Court, therefore the Attorney General, "may continue to detain" and "may release on bond." *Id.* While this language is discretionary, the statute provides that the noncitizen has the right to request a custody redetermination (*i.e.*, bond hearing)

before an IJ – which is precisely what Diaz Sandoval has done.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

Notably, Respondent previously released Diaz Sandoval on bond pursuant to Section 1226(a).  The Government does not cite to anything to support its new interpretation that his current arrest is under 1225(b)(2)(A).  And the Court is not persuaded that Petitioner's nearly 10-year-pending application for cancellation of removal is enough to constitute "seeking admission."  To hold otherwise, would allow the Government to reopen any previous case that it chose to administratively close (as low priority) and now take a conflicting position.  The Court is not willing to open those floodgates.

The Supreme Court has looked at these statutes and clarified that they apply in different circumstances.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Section 1225 is "framed [] as a part of the process that 'generally begins at the Nation's borders and ports of entry, where the Government must determine whether [noncitizens] seeking to enter the country are admissible.'"  *Rosado v. Figueroa, et al.*, No. 2:25-cv-02157-DLR-CDB, 2025 WL 2337099, at *8 (citing *Jennings*, 583 U.S. at 287).  Whereas Section 1226(a) applies to the process of "arresting and detaining" noncitizens who are already living "inside the United States" but still subject to removal.  *Jennings*, 538 at 288.  Put simply, Section 1225 applies to

noncitizens "arriving to the country" and Section 1226 governs detention of noncitizens "already in the country." *Id*.

Looking to the facts of this case, it is undisputed that Diaz Sandoval, by definition, is a noncitizen "present in the United States who has not been admitted or paroled." 8 U.S.C. § 1182(a)(6)(A). Respondent concedes that they do not know when Diaz Sandoval arrived in the U.S. *See* ECF No. 5-2, PageID.77; ECF No. 6-2, PageID.123. But Diaz Sandoval states that he has resided here for more than twenty-five years. ECF No. 1, PageID.2. Prior to his arrest, he lived in Lincoln Park, Michigan. *Id.* at PageID.15. Under these circumstances, it cannot be said that Section 1225(b)(2)(A) applies to him. Diaz Sandoval was not "arriving to the country." Quite the contrary, he was arrested while present and "already in the country," having lived here for decades, making Section 1226 applicable. *See Jennings*, 538 at 288; *see also Lopez-Campos*, 2025 WL 2496379 at *8.

The record further supports this interpretation. On December 14, 2009, when Diaz Sandoval was arrested for being in the country unlawfully, he was provided with a Form I-862 (Notice to Appear) and a Form I-286 (Notice of Custody Determination). ECF No. 6-2, PageID.122-125. Respondent initiated immigration proceedings against him by filing the Notice to Appear. *Id*. The Warrant and Notice of Custody Determination cited INA § 236 (codified at 8 U.S.C. § 1226) as the authority for Diaz Sandoval's detention. *See* ECF No. 6-3, PageID.125. Notably,

on his Notice to Appear, the Government checked the box labeled "You are an alien **present** in the United States who has not been admitted or paroled" rather than checking the box labeled "**arriving** alien."  ECF No. 6-2, PageID.123 (emphasis added).  And that was nearly 16 years ago, which further supports the Court's conclusion that Section 1226(a), as opposed to 1225(b)(2)(A), is applicable to this case.  If Diaz Sandoval was "present" and not "arriving" 16 years ago, he most certainly should be deemed "present" now.

Sixteen years after having initially released Diaz Sandoval on bond, and following his rearrest on July 13, 2025, Respondent now claims his detention was under Section 1225(b)(2)(A).  ECF No. 5-2, PageID.79.  The Court cannot credit this new position that was adopted post-hac, despite clear indication that Diaz Sandoval was not detained under this provision when he was first apprehended, arrested and bonded in 2009.[6]  *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020) (holding that, under arbitrary and capricious review in the administrative law context, "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post

---

[6] What's more, "[o]n December 16, 2009, ICE ERO informed Diaz Sandoval that he would be released pending his removal proceedings on the condition that he post a $1,500 bond.  Diaz-Sandoval did so and was released from DHS custody."  ECF No. 5-2, PageID.78.  But for the Government's new policy, Petitioner would have been entitled to the exact same bond hearing he received then, today.  Unfortunately for the Government, DHS's priority changes do not in turn dictate changes in statutory interpretation.

hoc rationalizations").[7]  And nearly every, if not all, courts addressing this very issue have held the same.[8]

Further, if Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework.  The Laken Riley Act added a subsection to Section 1226 that specifically mandated detention for noncitizens who are inadmissible under Sections 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Diaz Sandoval), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) ***and*** have been arrested for, charged with, or convicted of certain crimes.  *See* 8 U.S.C. § 1226(c)(1)(E).  Respondent's interpretation of the statutes would render this recently amended section superfluous.  As another court recently held,

> [W]hile Section 1226(a) expressly carves out certain "criminal" noncitizens from its discretionary framework, it does not similarly

---

[7] *See Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025).

[8] *See e.g. Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 n.9 (D. Mass. July 7, 2025) ("DHS cannot convert the statutory authority governing . . . detention from [Section 1225(b)] to [Section 1226(a)] through the post-hoc issuance of a warrant." (citing *Matter of Q. Li*, 29 I. & N. Dec. 66, 69 n.4 (BIA 2025)); *Martinez v. Hyde*, ---F. Supp. 3d ---, 1:25-cv-11613-BEM, 2025 WL 208438 (D. Mass. July 24, 2025) ("[S]ection 1125(b)(2) cannot be read to mandate detention of non-citizens already present within the United States, based on certain inadmissibility grounds, as that would nullify a recent amendment to the immigration statues."); *Lopez Benitez*, 2025 WL 2371588 at *5 ("The Court cannot credit Respondents' new position as to the basis for Mr. Lopez Benitez's detention, which was adopted post hoc and raised for the first time in this litigation.").

carve out noncitizens who would be subject to mandatory detention under Section 1225(b)(2). *See* 8 U.S.C. § 1226(a) ("*Except as provided in subsection (c)* ..., the Attorney General ... *may*" (emphases added)). "That express exception" to Section 1226(a)'s discretionary framework "implies that there are no *other* circumstances under which" detention is mandated for noncitizens, like [Diaz Sandoval], who are subject to Section 1226(a). *Jennings*, 583 U.S. at 300 (citing A. SCALIA & B. GARNER, READING LAW 107 (2012)); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("that Congress has created specific exceptions" to the applicability of a statute or rule "proves" that the statute or rule generally applies absent those exceptions).

*dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025). "If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless" and this Court, too, "will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)." *Maldonado v. Olsen*, ---F. Supp.3d----, No. 0:25-cv-03142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025).

There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-five years and was already within the United States when he recently encountered and was apprehended and arrested by ICE ERO. The reading of the statutes supports this finding, as does every other Court that has had to address the

distinction between Section 1225(b)(2)(A) and Section 1226(a).[9]  Therefore, the

Court finds that Diaz Sandoval is not subject to the provisions of Section

---

[9] *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, ---F. Supp. 3d ---, 1:25-cv-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025); *Rosado v. Figueroa et al.*, No. 2:25-cv-02157-DLR, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Gonzalez et al. v. Noem et al.*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Garcia Jimenez v. Kramer*, No. 4:25-cv-03162-JFB-RCC, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Maldonado v. Olson*, ---F.Supp.3d ----, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero v. Hyde, et al.*, ---F.Supp.3d----, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Benitez et al. v. Noem et al.*, No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, --- F.Supp.3d ----, No. 0:25-cv-03051, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Diaz Diaz v. Mattivelo*, No. 25-cv-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025); *Doe v. Moniz*, --- F.Supp.3d ----, No. 1:25-cv-12094-IT, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Pizarro Reyes v. Raycraft, et al.*, No. 2:25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Salcedo Aceros v. Polly Kaiser et al.*, No. 25-cv-5624, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Lamidi v. FCI Berlin, Warden*, No. 1:25-cv-00297-LM-TSM (D.N.H. Sept. 15, 2025); *Garcia Cortes, v. Noem et al.*, No. 25-cv-02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Maldonado Vazquez v. Feeley et al.*, No. 25-cv-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Velasquez Salazar v. Dedos et al.*, No. 25-cv-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Hasan v. Crawford*, ---F.Supp.3d ----, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Yumbillo v. Stamper*, No. 25-cv-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL2690565 (W.D. Ky. Sept. 19, 2025); *Choglio Chafla v. Scott et al.*, No. 2:25-cv-00437-SDN, 2025 WL 2688541 (D. Me. Sept. 22, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ----, No. 1:25-cv-01163-KES-SKO, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Giron Reyes v. Lyons*, ---F. Supp. 3d ----, No. 25-CV-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Barrajas v. Noem et al.*, No. 25-cv-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025); *Valencia Zapata v. Kaiser*, ---F. Supp. 3d ----, No. 25-cv-07492, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); *Quispe v. Crawford, et al.*, No. 1:25-cv-1471-AJT-LRV, 2025 WL2783799 (E.D. Va. Sept. 29, 2025); *Belsai D.S. v. Bondi, et al.*, No. 25-cv-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Echevarria v. Bondi, et al.*, No. cv-25-03252-PHX-DWL, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Guerrero Orellana v. Moniz*, ---F. Supp. 3d ---, No. 25-cv-12664-PBS, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Hyppolite v. Noem, et al.*, No. 25-cv-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

1225(b)(2)(A).  Rather, he clearly falls under the provision of Section 1226(a) and is subject to the discretionary bond determination outline therein.

## C.    DUE PROCESS

Finally, Diaz Sandoval argues that his continued detention is a violation of due process – and the Court agrees.

The Fifth Amendment guarantees the right to be free from deprivation of life, liberty or property without due process of law.  U.S. CONST. amend. V.  Liberty is one of the most basic and fundamental rights afforded and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The Due Process Clause extends to all "persons" regardless of status, including noncitizens (whether here lawfully, unlawfully, temporarily, or permanently).  *Id.* at 693; *see also Reno v. Flores*, 507 U.S. 292, 306 (1993); *Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *4 (6th Cir. Jan. 18, 2023).

Respondent does not dispute that Diaz Sandoval is entitled due process, rather the Government argues that it afforded the process due under Section 1225(b)(2)(A) when Diaz Sandoval "was given notice of the charges against him, he has access to counsel, he has attended a hearing with an immigration judge, he has requested bond, he has the right to appeal the denial of his request for bond, he has been detained by

ICE for eleven weeks, and he is scheduled for another hearing in immigration court in less than three months." *See* ECF No. 5, PageID.53-55.  The Supreme Court has held that "due process under the constitution is coextensive with the removal procedures provided by Congress." *Id*. at PageID.53-54 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–140 (2020)).  However, having found that Section 1226(a) governs Diaz Sandoval's detention, the Government's assessment fails and the process due to a non-citizen that is apprehended and detained is that which is afforded under Section 1226(a) – a bond hearing.  Here, the IJ did not conduct a bond hearing.

In evaluating due process in the context of civil confinement, the Court looks to (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail. *Mathews v. Eldrige*, 424 U.S. 319 (1976); *see also United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020).  All three factors weigh in favor of affording Diaz Sandoval a detention hearing.  First, his liberty is at stake.  Second, the risk of erroneously depriving him of his freedom is high if the IJ fails to assess his risk of flight and dangerousness.  And third, on the record currently before the Court, given the history and characteristics of this Petitioner, the Government has

not and likely cannot show that it has a significant interest in Diaz Sandoval's continued detention.

Accordingly, the Court agrees that detention of Diaz Sandoval under the mandatory detention framework is a violation of his due process rights.

## IV.

As this Court has previously stated:

> Section 1226(a) of the INA recognizes that the core and "most elemental of liberty interests" is to be free from restraint and physical detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). For centuries, the Government has acted in accordance with these principles. The recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests.

*Lopez-Campos*, 2025 WL 2496379 at *10. The plain language of both Sections 1226(a) and 1225(b)(2)(A) mandate a finding that Diaz Sandoval is entitled to a detention hearing pending his removal proceedings. Because the Immigration Court is in the best position to evaluate Petitioner's risk of non-appearance and dangerousness, this Court leaves to its sound discretion a determination on that issue.

Accordingly, the Court **DISMISSES** the Petition against Respondents Kristi Noem, Pamela Bondi, DHS, and EOIR. Diaz Sandoval's Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**. Respondent is **HEREBY ORDERED** to

immediately release Diaz Sandoval, or in the alternative, provide him with a bond hearing under 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order.

**IT IS FURTHER ORDERED** that Respondent is **ENJOINED** from pursuing detention on the basis of 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondent shall file a Status Report with this Court on or before October 27, 2025, to certify compliance with this Order.  The Status Report shall include if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**IT IS SO ORDERED.**

Dated:  October 17, 2025                          s/Brandy R. McMillion
       Detroit, Michigan                          HON. BRANDY R. MCMILLION
                                         United States District Judge